UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW A. POPE,

                Plaintiff,                  CIVIL ACTION NO. 12-13253

        v.                         DISTRICT JUDGE MARIANNE O. BATTANI

                                    MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 12, 14)

Plaintiff Matthew A. Pope challenges the Commissioner of Social Security's ("the Commissioner") final denial of his benefits application.  Cross motions for summary judgment are pending (Dkt. Nos. 12, 14).  Plaintiff also responded to the Commissioner's motion (Dkt. No. 15).  Judge Marianne O. Battani referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

I.      **RECOMMENDATION**

Because the Administrative Law Judge ("ALJ") did not properly follow the treating source rule, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and the case be **REMANDED** to the Commissioner.

II.     **DISCUSSION**

    *A.*    *Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and

-1-

Supplemental Security Income are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]."  *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.      Standard of Review**

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited such that the Court

"must affirm the Commissioner's conclusions absent a determination that the Commissioner has

failed to apply the correct legal standard or has made findings of fact unsupported by substantial

evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)

(internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir.

2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further

administrative proceedings unless the claimant has been prejudiced on the merits or deprived of

substantial rights because of the agency's procedural lapses") (internal quotation marks omitted)).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks

omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations

omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it

must be affirmed even if the reviewing court would decide the matter differently and even if

substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545

(6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone

of choice within which the decisionmakers can go either way, without interference by the courts"

(internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court

is limited to an examination of the record and must consider that record as a whole. *See Bass v.*

*McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th

Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

## III.   REPORT

### A.   Administrative Proceedings

Plaintiff applied for disability and disability insurance benefits on March 17, 2010, alleging he became disabled on December 12, 2009 (Tr. 11). After the Commissioner initially denied Plaintiff's application, he appeared with counsel for a hearing before ALJ Kathleen H. Eiler, who considered the case *de novo*. In a written decision, the ALJ found Plaintiff was not disabled (Tr. 15-22). Plaintiff requested an Appeals Council review (Tr. 7). On June 28, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-3).

### B.   ALJ Findings

Plaintiff was 32 years old on his disability onset date in December of 2009 (Tr. 11). He has an eleventh grade education and past relevant work as a tractor trailer/truck driver and a call center supervisor (Tr. 20, 40). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since his

disability onset date (Tr. 13).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative disc disease[1], diabetes mellitus, obesity, affective disorder – bipolar type, and attention deficit and hyperactivity disorder ("ADHD") (Tr. 13).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (Tr. 15).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> less than the full range of sedentary work[2]. . . .  [Plaintiff] can occasionally push or pull with his bilateral lower extremities.  He can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs. He can also occasionally balance, stoop, crouch, kneel, and crawl.  [Plaintiff] should avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery.  He retains the mental capacity to perform one- and two-step tasks on a sustained basis.  He can occasionally interact with supervisors and coworkers, but should never interact with the general public.

(Tr. 17).

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a tractor trailer/truck driver or call center supervisor (Tr. 20).

At step five, the ALJ found that Plaintiff was not disabled, because he could perform a significant number of jobs available in the economy, such as bench assembler, production

---

[1]"Degenerative disc disease is one of the most common causes of low back pain. Degenerative disc disease is not really a disease at all, but rather a degenerative condition that at times can produce pain from a damaged disc."  *See* http://www.spine-health.com/conditions/degenerative-disc-disease/what-degenerative-disc-disease (last visited July 8, 2013).

[2]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

inspector, and surveillance system monitor (Tr. 21).

### C.   *Administrative Record*

#### 1.   **Plaintiff's Hearing Testimony and Statements**

Plaintiff testified that the longest time he has held a job was eight or nine months (Tr. 44).
Plaintiff had chronic back pain and underwent surgery on April 26, 2011 (Tr. 40-41).  Before
surgery, he experienced pain radiating down his left leg to his toes, and he was unable to bathe
himself (Tr. 42, 47-48).  Since the surgery, his pain has decreased and is limited to his back (Tr.
42).  He is able to bathe himself (Tr. 48).  The pain limits his ability to stand, sit, and lift his six
year old daughter (Tr. 40-41).

According to Plaintiff, he has trouble concentrating and issues controlling his anger (Tr.
45, 50).  He cannot remember appointments and has missed numerous counseling sessions (Tr.
51).  Plaintiff takes several prescription medications for pain, bipolar disorder, and sleeplessness;
they make him sleepless, restless, and unable to concentrate (Tr. 43).  Plaintiff attends counseling
sessions once a week, and his attitude has improved (Tr. 44).

Plaintiff uses social media, plays video games, and watches television (Tr. 46).  He
experiences manic episodes two to three times per week and periods of depression four to five
times per week (Tr. 51).  He tries to clean his room and play catch with his daughter when he can
concentrate long enough to do so (Tr. 46).  Plaintiff grocery shops only while accompanied and
with the aid of an electric cart (Tr. 46, 48).

#### 2.   **Medical Evidence**

The medical evidence shows that Plaintiff has a history of disc herniation causing
numbness and pain in his left leg and hip (Tr. 225).  Plaintiff also has a history of lumbar

radiculopathy,[3] ADHD, diabetes, affective disorder – bipolar type, and obesity (Tr. 226, 264, 269, 352).  In April of 2011, Plaintiff had successful surgery on his lumbar spine (Tr. 18, 249-257).

Plaintiff saw his treating physician    Ann Marie Tadeo, M.D.    every four to six weeks beginning on March 17, 2011, with complaints of trouble focusing and concentrating, mood swings, irritability, impulsivity, and sleep disturbance (Tr. 377-78, 472-77).[4]  Dr. Tadeo opined that Plaintiff had fair to poor focus, concentration, and memory; and, he suffered from Bipolar Disorder Type I and ADHD (Tr. 378).  She prescribed Zyprexa, a mood stabilizer (Tr. 378).

On July 7, 2011, Dr. Tadeo completed a Mental Impairment Questionnaire and a Mental RFC Assessment, wherein she noted that Plaintiff suffered from poor memory, sleep disturbance, mood disturbance, difficulty thinking or concentrating, and hostility and irritability (Tr. 472).  Dr. Tadeo noted daytime fatigue as a result of Zyprexa (Tr. 473).  She further noted that Plaintiff was not significantly limited in his ability to carry out one- or two-step step instructions, but was markedly limited in his ability to maintain attention and concentration for extended periods (Tr. 476).

Plaintiff began psychotherapy with Kristen Kolberg, LLMSW, on January 20, 2011 (Tr. 379).  In February and March of 2011, the psychotherapist reported that Plaintiff was struggling with impulsiveness and poor sleep, down mood, overeating, and increased anger since starting Zyprexa (Tr. 394-395, 400).  On July 13, 2011    Plaintiff's last documented appointment    the psychotherapist noted that Plaintiff experienced fleeting suicidal thoughts and depression (Tr.

---

[3]Lumbar radiculopathy refers to a set of symptoms typically associated with a compressed spinal nerve in the lower region of the back, such as pain, numbness, tingling, and muscle weakness. *See* http://www.laserspineinstitute.com/learn_more/glossary/definition/lumbar_radiculopathy/145/ (last visited July 8, 2013).

[4]Apart from the March 17 visit and her Mental Impairment Questionnaire and Mental RFC Assessment, the record contains no other treatment records by Dr. Tadeo (Tr. 377-378, 472-477).

478).

### 3.     Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of
Plaintiff's age, education and work experience who could perform less than the full range of
sedentary work (Tr. 56).  The hypothetical individual could: occasionally push or pull with his
bilateral lower extremities; never climb ladders, ropes, or scaffolds, but occasionally climb ramps
and stairs; and, occasionally balance, stoop, crouch, kneel, and crawl (Tr. 57).  He must avoid
concentrated exposure to workplace hazards, such as unprotected heights and moving machinery
(Tr. 57).  He could perform only one- and two-step tasks on a sustained basis (Tr. 57).  He could
have occasional interaction with supervisors and coworkers, but no interaction with the general
public (Tr. 57).  The VE testified that the individual could not perform any of Plaintiff's past
relevant work but could perform lower-level unskilled work, such as a bench assembly job (Tr.
57-58).

The ALJ then added to the hypothetical that the individual would be off-task at least
fifteen percent of each workday (Tr. 58).  The VE opined that fifteen percent was excessive and
stated that he would not testify to anything more than ten percent (Tr. 58).

### D.     *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ erred by failing to: (1) give controlling weight to his treating
physician's (Dr. Tadeo) opinion or adequately explain the reasons for giving very little weight to
the opinion; and (2) adequately address his limitations in maintaining concentration, persistence,
or pace.

### 1.     Treating Source Rule

The Sixth Circuit has instructed ALJs on how to assess opinions from treating sources

like Dr. Tadeo:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May, 2, 2013).

Here, the ALJ accorded "very little weight" to Dr. Tadeo's opinion:

> Her "Mental Impairment Questionnaire" and "Mental Residual Functional Capacity" were submitted in July 2011 and included notations asserting [Plaintiff's] poor memory; sleep and mood disturbance; emotional lability; feelings of guilt/worthlessness; difficulty thinking or concentrating; social withdrawal or isolation; and hostility and irritability. Dr. Tadeo opined that [Plaintiff] would be absent more than three times a month due to his physical health issues, mood instability, and easy distractability. [Dr. Tadeo] went on to find [Plaintiff] even more limited and claimed that he has had "three episodes of decompensation."

> The undersigned found Dr. Tadeo's conclusions and resultant opinions inconsistent with her treatment records and notes. Furthermore, Dr. Tadeo's use of the term "episodes of decompensation," as applied here, shows her non-familiarity with what that term of art means under the applicable Social Security Regulations. Although the undersigned recognizes [Plaintiff's] history of mental struggle, his record shows no evidence that he has experienced even one episode of decompensation, as it is defined within the process.

(Tr. 19-20). In finding inconsistency, the ALJ cited to the psychotherapist's treatment records

from January 20, 2011 to March 22, 2011, as well as Dr. Tadeo's March 17, 2011 treatment notes,

Mental Impairment Questionnaire, and Mental RFC Assessment (Tr. 20). However, it is not

sufficiently clear upon what precise evidence the ALJ relied, as the medical records do not yield

apparent incongruity.[5] For example, in her March 17, 2011 psychiatric evaluation, Dr. Tadeo

noted that Plaintiff suffered from ADHD and bipolar disorder and had fair to poor focus,

concentration, and memory (Tr. 378). Plaintiff's psychotherapy treatment records evidence

depressive episodes, sleep disturbance, easy distractibility, and impulsiveness (Tr. 396, 398-399).

In her Mental Impairment Questionnaire and RFC Assessment, Dr. Tadeo noted that Plaintiff had

poor memory, sleep disturbance, and difficulty thinking or concentrating (Tr. 472, 476).

If Dr. Tadeo's opinion was, in fact, consistent with the evidence in the record, it should be

entitled to controlling weight. *See* 20 C.F.R. § 404.1527 (opinions of treating physicians are

given controlling weight when they are well supported by medically acceptable clinical and

diagnostic techniques and are not inconsistent with the other substantial evidence). On remand,

the ALJ should indicate specifically what evidence she relied on in finding that Dr. Tadeo's

conclusions and resultant opinions were inconsistent with her treatment records and notes.

This does not end the analysis:

when "the opinion of a treating source is not accorded controlling weight, an ALJ
must apply certain factors – namely, the length of the treatment relationship and
the frequency of examination, the nature and extent of the treatment relationship,
supportability of the opinion, consistency of the opinion with the record as a
whole, and the specialization of the treating source – in determining what weight
to give the opinion." *Wilson*, 378 F.3d at 544. Additionally, "a decision denying
benefits 'must contain specific reasons for the weight given to the treating
source's medical opinion, supported by the evidence in the case record, and must
be sufficiently specific to make clear to any subsequent reviewers the weight the

_____

[5]Although the ALJ found that    contrary to Dr. Tadeo's opinion that Plaintiff had three
episodes of decompensation    the record shows no evidence of even one episode of
decompensation, it is unclear to this Magistrate Judge whether this alone is sufficient to
outweigh Dr. Tadeo's otherwise consistent medical records (Tr. 20).

adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)).

*Beardsley v. Comm'r of Soc. Sec.*, No. 12-cv-11167, 2013 WL 1118009 at *3 (E.D. Mich. March 18, 2013).  Here,    in addition to failing to clarify the inconsistent evidence     "[t]he ALJ's decision fails to provide clear reasoning for the weight assigned [Dr. Tadeo's] opinion, and does not discuss what impact the above listed factors had on the assessment other than minimally addressing the consistency of the opinion with the record." *Id.*  Specifically, the ALJ failed to consider the length of Dr. Tadeo's treatment relationship with Plaintiff; the four to six week frequency with which Dr. Tadeo treated Plaintiff; the treatment she provided; the kinds and extent of examinations performed or ordered from specialists and independent laboratories; whether Dr. Tadeo's opinion was supported by medical signs and laboratory findings; and that Dr. Tadeo specializes in psychiatry.  "[F]ailure to follow the procedural requirement of identifying the reasons for discounting [Dr. Tadeo's opinion] and for explaining precisely how those reasons affected the weight accorded [Dr. Tadeo's opinion] denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Rogers*, 486 F.3d at 243.

This case should be remanded for the ALJ to address the reasons for the weight assigned to Dr. Tadeo's opinion (assuming the ALJ does not give controlling weight to Dr. Tadeo's opinion on remand).

### 2.    Limitations in Maintaining Concentration, Persistence, or Pace

Plaintiff's final argument is that the ALJ failed to adequately address his limitations in maintaining concentration, persistence, or pace.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work,

the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d. 504, 516 (6th Cir. 2010). There is relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine tasks.[6] However, there is also authority that has found that an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work or one- or two- step tasks and omitting a moderate concentration or pace limitation.[7] In analyzing the case law, this Magistrate

_____

[6]*See, e.g., Benton v. Comm'r of Soc Sec.*, 511 F.Supp.2d 842, 849 (E.D. Mich. 2007) ("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations"); *Green v. Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("In the present case, while finding that Plaintiff is 'moderately limited with concentration, persistence, and pace,' [the ALJ's] only limitations were with co-workers and the public, and to 'unskilled, light jobs.' These parameters are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at an unskilled job" (internal citations omitted)); *Long v. Comm'r of Soc. Sec.*, No. 09-14227, 2010 WL 6413317, at *7 (E.D. Mich. Dec. 6, 2010) ("In the present case, the ALJ gave Plaintiff the mental limitation for 'simple unskilled work.' However, the ALJ also determined that 'with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.' The ALJ did not incorporate [that] limitation … into the controlling hypothetical. This was error." (internal citations omitted)); *Perkins v. Comm'r Soc. Sec.*, No. 10-10089, 2010 WL 5634379, at *9 (E.D. Mich. Dec. 14, 2010) (same).

[7]*See, e.g., Hess v. Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at *7-8 (E.D. Mich. June 16, 2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicated that the hypothetical question and the ALJ's finding of 'moderate' limitations … are not incompatible"); *Latare v. Comm'r of Soc. Sec.*, No. 08-13022, 2009 WL 1044836, at *3 (E.D. Mich. April 20, 2009) ("The Law Judge's hypothetical question to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment"); *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such

Judge agrees that a hypothetical limiting a claimant to simple, routine tasks or one- and two-step tasks may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace, because the difficulty of a task does not always equate with the difficulty of staying on task. *See e.g., Green v. Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%-30% of the time at work. Thus, 'moderate' concentration problems … need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence. Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient"; *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job").

However, there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled work" or "one- and two-step tasks," but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC. *See Hess v. Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008); *see also Sutherlin v. Comm'r of Soc. Sec.*, No. 10-10540, 2011 WL 500212, at *2 (E.D. Mich. Feb. 8, 2011) ("[T]he administrative law judge was not required to incorporate the broad terminology of the [moderate CPP limitations] verbatim. Rather, as required, the administrative law judge carefully considered and evaluated

---

moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace"); *Sutherlin v. Comm'r of Soc. Sec.*, No. 10–10540, 2011 WL 500212, at *3 (E.D. Mich. Feb. 8, 2011) ("The hypothetical question that was presented to the vocational expert [omitting moderate CPP limitations] properly accommodated [Plaintiff]'s moderate limitation in concentration, pace, and persistence because it accurately described the effect of this limitation in concrete terms").

-13-

the credibility of all the relevant evidence when making the residual functional capacity

determination and transforming [Plaintiff's] restrictions into concrete terms").  In a similar case,

this evaluative process was explained as follows:

> Taken in isolation, the hypothetical limitations consisting of '[s]imple routine
> tasks in a low stress environment' and 'minimal changes in the work place setting'
> might appear inadequate to account for 'moderate' concentrational and pacing
> deficiencies. However, the record as a whole indicates that the hypothetical
> question and the ALJ's finding of "moderate" limitations findings are not
> incompatible.

*Hess,* 2008 WL 2478325, at *7; *see also Lewicki*, 2010 WL 3905375, at *3.

In *Sutherlin*, the state agency doctor found that the claimant suffered moderate difficulty

in maintaining concentration, persistence, or pace.  *See Sutherlin*, 2011 WL 500212, at *3.

However, the doctor, whose opinion the ALJ accorded great weight, ultimately concluded that

the claimant retained the ability to perform one- to two-step tasks on a sustained basis.  *Id*.  The

court in *Sutherlin* found that the hypothetical was sufficient because it described the effect of the

limitation in concrete terms, namely: (1) minimal contact with the public; (2) able to work in

proximity to, but not collaboratively with, other people; (3) limited to one- to two-step work

tasks; and (4) may climb ramps—but not ladders—occasionally. *Id*. at *1, 3.

In this case, the ALJ accorded the greatest weight to Dr. Hill's opinion which was

"virtually identical" to the RFC found by the ALJ (Tr. 19).  Dr. Hill opined that "[i]n view of a

lack of evidence, [Plaintiff] retains the mental residual capacity to perform one- and two-step

tasks on a sustained basis" (Tr. 71).  Plaintiff contends that in light of both Dr. Hill's prefatory

statement and the date of his opinion     July 9, 2010     the ALJ's hypothetical does not

accurately portray his physical and mental impairments (Dkt. No. 15 at p.10 (CM/ECF)).

Plaintiff urges that Dr. Hill issued his opinion before Plaintiff began psychotherapy treatment and

that his psychotherapist's treatment records evidence his *inability* to perform one- and two-step

tasks on a sustained basis.  *Id*.

Plaintiff's argument fails.  As an initial matter, Dr. Tadeo     whose opinion Plaintiff argues should be accorded controlling weight     opined that Plaintiff is not limited in his ability to carry out one- and two-step tasks (Tr. 476).  Dr. Tadeo issued her opinion on July 7, 2011, after Plaintiff had undergone months of psychotherapy.  *Id*.  Secondly, the ALJ's determination that Plaintiff can perform less than the full range of sedentary work with the aforementioned limitations[8] accurately reflects Dr. Hill's opinion that while Plaintiff is "moderately" limited with respect to concentration, persistence, and pace, he can engage in one- and two-step tasks on a sustained basis (Tr. 71).

As in *Sutherlin* and *Hess*, this Magistrate Judge finds that the ALJ's finding of a moderate limitation in concentration, persistence, or pace has to be considered in conjunction with the record and Dr. Hill's broader conclusions, which suggest that Plaintiff could successfully perform one- and two-step tasks on a sustained basis.  As such, the ALJ's RFC determination adequately accounted for Plaintiff's limitation in concentration, persistence, and pace, and it should not be disturbed on appeal.

## IV.    CONCLUSION

Because the ALJ did not properly follow the treating source rule, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and the case be **REMANDED** to the Commissioner

---

[8]"Plaintiff can occasionally push or pull with his bilateral lower extremities.  He can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs. He can also occasionally balance, stoop, crouch, kneel, and crawl.  [Plaintiff] should avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery.  He retains the mental capacity to perform one- and two-step tasks on a sustained basis. He can occasionally interact with supervisors and coworkers, but should never interact with the general public" (Tr. 17).

pursuant to sentence four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).


s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge


Dated: July 10, 2013

Certificate of Service

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, July 10, 2013, by electronic and/or ordinary mail.*

*s/Eddrey Butts*
*Case Manager for Magistrate Judge Mark A. Randon*